In this case Robert Kaufman and Robert Kaufman as Trustee under a trust agreement dated November 28, 1968, hereinafter referred to as plaintiff, seek to recover the sum of $277,816.69 from the United States, defendant, as the reasonable value of the alleged use and occupancy of land owned by the plaintiff in the State of New Jersey by the defendant during the period of December 1, 1968, to July 1, 1975. The plaintiff alleges two theories for a recovery, namely, a Fifth Amendment taking by the defendant, and, alternatively, the existence of an implied-in-fact contract between him and the government that obligated the government to pay rent.
The defendant alleges that if the plaintiff has any claim, which it denies, it is barred by the six-year statute of limitations, and that no contract implied-in-fact existed between the plaintiff and the defendant for payment by the government to the plaintiff for the use of the land.
*877 The case is before us on cross-motions for summary judgment. The pleadings, briefs and oral argument of the parties show the facts to be generally as follows.
In 1942 the State of New Jersey gave the United States Department of Commerce a permit to use approximately 15 square miles of land in the wilderness area of the state to conduct classified tests. This land consisted of state park lands and other lands acquired by the state from private owners in the 1930’s by the foreclosure of delinquent tax liens. The United States Navy obtained a permit in 1945 to use the land for a bombing and gunnery range. It used the land for this purpose until 1959 when a permit was obtained by the New Jersey National Guard from the state to use the land for bombing and strafing practice. Thereafter, there was a joint use of the property for this purpose by the defendant and national guard units of New Jersey and various other states, with the primary users being such national guard units. The defendant admits using the land for such purposes until the end of 1970.
In the 1960’s the courts of New Jersey held that the private owners of parts of the land who had lost their land through tax foreclosures could redeem their property. There were some 600 of these landowners. Investors and developers began to buy the tax liens and properties covered by them when in the mid-1960’s there was a proposal to build a jet airport near the bombing and gunnery range. One of these investors was plaintiff Robert Kaufman and his K & D Land Trust which he organized on or about November 28, 1968. The record shows that he and his trust bought tax sale certificates and tax liens on various parcels of such land during the period of 1968 through 1971. He acquired title to portions of the land involved here by foreclosing the tax liens during such years. He also made outright purchase of certain other tracts during this period. He had acquired all his land by 1971. During 1971 and early 1972, he had his land surveyed and discovered that some of his land was within the gunnery range. His attorney arranged a meeting between the plaintiff and General Joseph D. Zink of the New Jersey Air National Guard on March 3, 1972. During that meeting General Zink told the plaintiff that some of his land was in *878 the bombing and gunnery area and asked for permission to continue using it. The plaintiff says that he agreed with General Zink for the continued use of the land, but that he asked to be paid for such use. It is upon this agreement that the plaintiff bases his claim of a contract implied in fact, which will be discussed below.
The first time that an authorized official of the United States took any action to obtain a lease from the plaintiff to use such land was on December 17, 1972, when the Chief of Engineers of the Army Corps of Engineers, which agency acts as the real estate broker for all the armed services, authorized negotiations to lease approximately 4,000 acres of the land claimed by the plaintiff. These negotiations were delayed due to plaintiffs failure to identify his land and to prove his ownership. Finally, a lease was signed in April, 1976, retroactive to July 1, 1975. The rent for the period covered by the lease is not involved in this case, as plaintiffs suit only covers his claim for prior use and occupancy from December 1,1968, to July 1,1975.
We first consider plaintiffs claim that he is entitled to recover because of the existence of an implied-in-fact contract between him and the United States. He bases this claim on his negotiations with General Zink. The facts show that General Zink was an official of the New Jersey Air National Guard, which is an agency of that state, and not of the United States. General Zink was neither an official nor an agent of the Federal Government. He had no authority whatever to bind the United States to any agreement or contract. If he made any agreement with the plaintiff, he was acting on behalf of the state agency and not for the Federal Government. It is well established that the United States is not bound by the acts of anyone who has no authority to bind the government, nor by the unauthorized acts of its agents. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380 (1947) and its progeny; Housing Corp. of America v. United States, 199 Ct. Cl. 705, 468 F.2d 922 (1972); and Edison Sault Electric Co. v. United States, 213 Ct. Cl. 309, 552 F.2d 326 (1977). Here, General Zink was neither an agent of the United States nor a person with authority to contract on its behalf.
*879 Furthermore, it has long been the rule that there must be a meeting of the minds of the parties before there can be a contract implied in fact. See Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 428 F.2d 1241 (1970). There was no meeting of the minds between the plaintiff and the United States in this case until the contract of lease was signed in April, 1976, retroactive to July 1, 1975, as a result of negotiations between the plaintiff and the Army Corps of Engineers, the only authorized agent of the United States who dealt with the plaintiff.
We hold that there was no contract implied in fact between the plaintiff and the United States that obligated the Federal Government to pay rent to the plaintiff from December 1, 1968, to July 1, 1975, and that plaintiffs claim based on that theory is without merit.
Defendant’s plea of limitations involves a more complicated problem because of a defect in its pleadings and the absence from the record of certain material facts, as shown by the following. The plaintiff filed his suit on June 23, 1980. Consequently, any part of his claim for a Fifth Amendment taking of his land by defendant that accrued prior to June 23, 1974, is barred by the six-year statute of limitations. 28 U.S.C. 2501. In defendant’s answer, it admitted that the government used and occupied plaintiffs land for a gunnery range between December 1, 1968, and June 30, 1975. Under this pleading, only that part of plaintiffs claim that accrued prior to June 23, 1974, would be barred, leaving the period from June 23, 1974, to July 1, 1975, unaffected by the statute of limitations. However, at oral argument counsel for the government stated that when she prepared defendant’s answer she did not have all of the facts which were later furnished to her, and that the above admission of use of plaintiffs land by the government from December 1, 1968, to June 30, 1975, was incorrect because the government did not use the land at all after 1970 until it acquired the above lease in 1976 retroactive to July 1, 1975. Defendant has not amended its answer to show this difference in the facts. In any event, the plaintiff disputes this statement of government counsel as to the period of use of his land by the government and says that the government’s use was continuous from December 1, 1968, until *880 July 1, 1975. Thus, there is a dispute of fact between the parties on this point which this court cannot resolve. Consequently, it will be necessary to remand this part of the case to the trial judge for factual findings as to the period of taking and adverse use by the government of plaintiffs land, if any, for the gunnery range between June 23,1974, and July 1,1975.
The plaintiff argues that his cause of action did not accrue until December 30, 1975, when the government fixed the amount of land at 3814 acres, or, in any event, not until the lease was signed by the parties on April 28, 1976, which fixed the period during which the government would pay rent, and, therefore, no part of his claim is barred by the statute of limitations. We do not agree. By his own affidavit that is attached to his pleadings, he admits that he knew as early as March 3, 1972, that the government was using his land for the gunnery range. As stated above, he met with General Zink on that date and complained of such use. This knowledge was sufficient to put the plaintiff on inquiry. We held in Japanese War Notes Claimants Ass’n. v. United States, 178 Ct. Cl. 630, 373 F.2d 356, cert. denied, 389 U.S. 971 (1967), that facts that put a person on inquiry start the running of the period of limitations. Therefore, it is clear that the period of limitations began to run on Plaintiffs claim at least on March 3, 1972, if not before. He could have filed this suit on that date, as the taking, if any, occurred prior to that time. He says he did not know the full extent of his cause of action until April 28, 1976, and for that reason he was not required to file suit prior to that time. We held in the Japanese War Notes case, supra, that lack of knowledge of the full extent of one’s claim will not prevent the running of the statute of limitations so long as the plaintiff is put on inquiry, which is certainly the case here. To hold otherwise would allow a claimant to postpone limitations indefinitely by saying he did not know the full extent of his claim.
The plaintiff cites and relies on the cases of United States v. Dickinson, 331 U.S. 745 (1947) and Castro v. United States, 500 F.2d 436 (1974) to support his argument that his claim is not barred by limitations. Both cases are clearly distinguishable on the facts from the instant case, and *881 neither case supports plaintiffs position. In Dickinson, the government built a dam that flooded the plaintiffs land by successive rises in the river that occurred over a two-year period of time. The court held that the plaintiff could wait until the water reached its ultimate level before bringing suit. In the case before us, the taking, if any, of plaintiffs land occurred all at once and not in successive stages. Limitations began to run when the taking, if any, occurred, or at least when the plaintiff was put on inquiry about it.
In Castro, the government took certain property in Saipan, Mariana Islands, for military purposes during World War II from private owners who were removed from the property in 1944. In 1968, the government determined that the land was no longer needed for military purposes and it was returned to the owners. The court held that limitations did not start to run against the owners for the taking by the government until the government made the non-military determination regarding the property and returned it to the owners. That case is not apposite to the case before us on the question of limitations.
We hold that all of plaintiffs claim that accrued prior to June 23, 1974, is barred by the statute of limitations. We remand the case to the trial judge for a trial and findings of fact and recommended conclusions of law on whether there was a Fifth Amendment taking of plaintiffs land by the government and by reason thereof the government used plaintiffs land for a gunnery range between June 23, 1974, and July 1, 1975, and, if so, the amount due plaintiff for the taking and use of the land during such period. Both parties are given leave to amend their pleadings in the trial court.
Accordingly, plaintiffs motion for summary judgment as to all claims that accrued prior to June 23, 1974, is denied. Defendant’s motion for summary judgment as to all of plaintiffs claims that accrued prior to June 23, 1974, is granted and to that extent plaintiffs petition is dismissed. The claims of plaintiff for the alleged taking and use of plaintiffs land by the government between June 23, 1974, and July 1, 1975, are remanded to the trial judge for a trial in accordance with this order.